UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

C.S., by and through his parents and next )
friend, RAYMOND and SHEILA SCOTT,   )
                                     )
        Plaintiff,                   )
                                     )
    vs.                              )         Case No. 4:09CV149 HEA
                                     )
STATE OF MISSOURI,, et al.,          )
                                     )
        Defendants.                  )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants State of Missouri, Missouri

State Board of Education, Missouri Department of Elementary and Secondary

Education, State Schools for the Severely Handicapped's, Motion to Dismiss, [Doc.

No. 10].  Plaintiff opposes the motion.  For the reasons set forth below, the Motion

is granted in part and denied in part.

Plaintiff, by and through his parents and next friend, Raymond and Sheila

Scott, filed this Complaint against Defendants State of Missouri, Missouri State

Board of Education, Missouri Department of Elementary and Secondary Education,

State Schools for the Severely Handicapped, and Jefferson R-7 School District

seeking injunctive and monetary relief under the Individuals with Disabilities

Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), Section 504 of the

Rehabilitation Act, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983 for violations of the Equal Protection Clause of the United States Constitution. Defendants, State of Missouri, Missouri State Board of Education, Missouri Department of Elementary and Secondary Education, and State Schools for the Severely Handicapped, collectively herein referred to as "State Defendants," have moved to dismiss for lack of subject-matter jurisdiction, pursuant to Fed.R.Civ. Rule 12(b)(1), for failure to state a claim, pursuant to Fed.R.Civ. Rule 12(b)(6), or in the alternative to make more definite and certain under Fed.R.Civ. Rule 12(e).

## Facts and Background

Plaintiff's Complaint alleges the following facts[1]: Plaintiff is a severely handicapped individual who has been diagnosed with Lissencephaly, Schissencephaly, Hypotonic quadriplegic Cerebral Palsy, Cortical Visual Impairment, intractable epilepsy, among other conditions. Plaintiff has attended Mapaville State School for the Severely Handicapped,[2] ("Mapaville"), since the Autumn of 2005.

---

[1] The recitation of the facts is taken from Plaintiff's Complaint and is set forth for the purposes of this Motion only. It in no way relieves the parties of the necessary proof of these facts later in this proceeding.

[2] On August 28, 2008, the State Schools for the Severely Handicapped was renamed the Missouri Schools for the Severely Disabled. Mo.Rev.Stat. § 162.730; L.2008, H.B. No.1807, § A. Because the parties refer to this defendant as "State Schools for the Severely Handicapped," the Court will likewise refer to this Defendant in the same manner.

Mapaville is one of several State Schools for the Severely Handicapped ("State Schools"). The State Schools are operated by the Missouri Department of Elementary and Secondary Education ("DESE"), the state agency responsible for accreditation and management of public schools in Missouri, including Mapaville. The Missouri State Board of Education ("State Board") is responsible for supervising instruction in all public schools in Missouri. Jefferson R-7 School District is a public school district.

The Complaint further alleges that during the time Plaintiff was a student at Mapaville, he was neglected on a regular basis to sit without interaction. His Individualized Education Programs, ("IEPs") were not implemented in material and significant part. Mapaville has materially failed to implement necessary and critical components of Plaintiff's educational program, as he has been subjected to oral and physical abuse and neglect at school. Further, Plaintiff alleges that Defendants collectively have failed Plaintiff and have violated their obligations to him through a persistent pattern of profound incompetence, willful neglect, gross misjudgment, and reckless indifference to his rights.

Plaintiff alleges Mapaville's inadequacies are systemic. Staff are unsupervised and unaccountable for their failures to effectuate IEP goals or otherwise treat the students with human dignity. Mapaville's chronic inadequate

supervision, staff apathy, lack of training, underskilled service providers, undertrained teachers and aids and untended classrooms have resulted in a trivial and meaningless education for Plaintiff.  Plaintiff contends these inadequacies, along with Defendants' failure to develop and implement Plaintiff's  IEPs, have denied Plaintiff a free appropriate public education.

Plaintiff sought relief through the administrative process provided by the State of Missouri.  After conducting a hearing, the Chief Hearing Officer issued an Order finding, *inter alia*, that the State Defendants failed to provide Plaintiff with a FAPE during the 2007-08 school year, that Plaintiffs teacher was not properly qualified, that Plaintiff's aides engaged in "grossly inappropriate" behavior, and that Plaintiff's parents were "justified" in removing Plaintiff from the State School, however, the Order denied Plaintiff's request for audio/video surveillance at Mapaville, but did require certain other compensatory services be provided for Plaintiff.

Plaintiff seeks the following relief: Reversal of the Due Process Order; a declaration that the Order was erroneous; a declaration that Plaintiff was denied a free appropriate public education during the statutory time period; Order the DESE to install audio/video monitoring of all classrooms and hallways at the State School for the Severely Handicapped, including Mapaville; an injunction against DESE from operating State Schools for the Severely Handicapped and an order that

Plaintiff be placed back in his school district; an order that DESE pay for compensatory educational services; reimbursement of reasonable attorney's fees and costs incurred; and actual damages.

## **Legal Standard**

When ruling on a motion to dismiss for failure to state a claim, the Court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Fed.R.Civ.P. 12(b)(6); *Erickson v. Pardus*, 551 U.S. 89 (2007). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To avoid dismissal for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson*, 551 U.S. at 93. Although the specific facts are not necessary, Plaintiff must allege facts sufficient to give fair notice of what the claim is and the grounds upon which it rests. *Id*.

Rule 12(b)(1) requires dismissal if the court lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). A district court has subject matter jurisdiction in civil actions arising under the laws of the United States. 28 U.S.C. § 1331.

Rule 12(e) provides that a party may move for a more definite statement if the pleading to which a party is required to respond is so vague or ambiguous that the

party cannot reasonably prepare a response.

**Discussion**

**Insufficiency of Pleadings**

State Defendants claim that Plaintiff's Complaint fails because it contains no indication of what the various named defendants are alleged to have done to violate the various statutory and constitutional provisions he invokes. State Defendants argue that Plaintiff's pleading is so vague and ambiguous that they cannot reasonably frame responsive pleadings.

Under Rule 8 of the Federal Rules of Civil Procedure, Plaintiff is required to set forth a short and plain statement of the grounds for the court's jurisdiction, a short and plaint statement of the claim showing the pleader is entitled to relief and a demand for the relief sought. Plaintiff's Complaint satisfies all three elements of Rule 8. While the State Defendants would like a more detailed recitation of the facts supporting Plaintiff's claims, the Federal system of notice pleading requires no more than that set out in Rule 8. Plaintiff sets out the basis of the Court's jurisdiction, each claim and the relief he seeks. Based on the allegations Plaintiff has set out, it is clear that the Complaint gives Defendants notice of the claims upon which he seeks relief. *Erickson*, 551 U.S. at 93.

**Individuals with Disabilities Education Act**

State Defendants contend that the relief Plaintiff seeks, namely audiovisual surveillance and compensatory damages, is not available under the IDEA. Plaintiff states that his IDEA claim seeks only audiovisual surveillance and compensatory education services, as opposed to tort-like monetary damages. For this reason, Plaintiff seeks damages through the other counts of his complaint.

Congress enacted the Individuals with Disabilities Education Act "to assure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). To further this end, states that agree to provide disabled children with special education and "related services" qualify for federal financial assistance. 20 U.S.C. § 1412. A team of professionals "must develop a specialized course of instruction, known as an individualized education program, or 'IEP,' for each disabled student, taking into account that child's capabilities." *Neosho R-IV Sch. Dist. v. Clark*, 315 F.3d 1022, 1026 (8th Cir.2003).

When an aggrieved party challenges an IEP as insufficient under the IDEA, a court must ensure that (1) the state complied with the procedures set forth in the Act; and (2) the IEP is "reasonably calculated to enable the child to receive

educational benefits." *Id*. at 1026-27. To prevail on a claim challenging the implementation of an IEP, the aggrieved party "must show more than a *de minimis* failure to implement all elements of that IEP, and instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP." *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir.2000); *Neosho*, 315 F.3d at 1027 n. 3. Plaintiff claims that Defendants failed to implement necessary and critical components of his educational program and therefore he did not receive a free appropriate public education.

Plaintiff petitions this Court to order the DESE to install 24-hour audio and video surveillance, or some other independent monitoring scheme, in all classrooms and hallways at State Schools, including Mapaville. Plaintiff makes this request through his appeal of the Hearing Panel's Due Process Order.

Plaintiff argues that audiovisual monitoring is available as a traditional equitable remedy under the IDEA. The IDEA permits a court to "grant such relief as the court deems is appropriate." 20 U.S.C. § 1414(i)(2)(C)(iii). "The ordinary meaning of these words confers broad discretion on the court." *Sch. Comm. of Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1996). The IDEA does not specify the type of relief available except that it must be "appropriate" in light of the purpose of the IDEA. *Id*. As noted above, the IDEA's purpose is to provide

disabled children with "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." *Id.* Therefore, this Court may order audiovisual monitoring of Plaintiff if the monitoring assists in providing Plaintiff with special education and related services.

The IDEA requires states to provide disabled children with "special education" and "related services." *Cedar Rapids Cmty. Sch. Dist. v. Garrett F.*, 526 U.S. 66, 68 (1999). Clearly, audiovisual surveillance for the purpose of parental monitoring is not an educational service, and Plaintiff does not argue it is. Rather, Plaintiff claims that "related services" broadly encompasses a number of supportive services, including audiovisual monitoring.

Under the IDEA,

> The term 'related services' means transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(26)(A). The parenthetical phrase lists examples of supportive services covered by the IDEA. *Cedar Rapids*, 526 U.S. at 73. Each example is a service provided to the child. The list is nonexhaustive; the definition of "related services" "broadly encompasses those supportive services that may be required to assist a child with a disability to benefit from special education." Id. at 73. The issue, then, is whether the requested audiovisual surveillance may be required to assist Plaintiff to benefit from special education.

Plaintiff states that he seeks the installation of audiovisual surveillance in public areas of the school, accompanied with a monitoring room equipped with a live feed and supportive personnel, for the purpose of observing Plaintiff's education and monitoring his safety. Plaintiff states its purpose is to ensure public oversight and to ensure that he receives the services required by his IEP. No discovery has yet been conducted. Based on the record, the Court cannot conclude as a matter of law that the requested surveillance would not provide Plaintiff with a service calculated to assist him in receiving special education. Therefore, State Defendants' motion to dismiss Plaintiff's claim for relief by installing audiovisual surveillance is denied.

State Defendants argue that Plaintiff may not seek compensatory damages under the IDEA. Plaintiff responds that he does not seek compensatory damages,

but instead seeks compensatory educational services.  Under the IDEA, a court may

order compensatory education services. *Birmingham v. Omaha Sch. Dist.*, 220 F.3d

850, 856 (8th Cir.2000). If Plaintiff prevails on his claim that Defendants denied him

a free appropriate education, he may recover compensatory educational services.

*Miener v. State*, 800 F.2d 749, 754 (8th Cir.1986).  As a result, State Defendants'

motion to dismiss Plaintiff's IDEA claim in Count I will be denied.

## Rehabilitation Act

Congress enacted the Rehabilitation Act, in part, to promote the inclusion and

integration of persons with disabilities into mainstream society.  See 29 U.S.C. §

701(a). To accomplish this, § 504 of the Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States
> ... shall, solely by reason of her or his disability, be excluded from the
> participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving Federal financial
> assistance....

29 U.S.C. § 794(a).  The Rehabilitation Act and the IDEA complement each other.

Whereas the IDEA imposes an affirmative duty on recipients of federal funds to

provide a free appropriate education for disabled children, the Rehabilitation Act

prohibits certain conduct on the part of recipients of federal assistance.  *Monahan v.*

*Nebraska*, 687 F.2d 1164, 1170 (8th Cir.1982).  Specifically, recipients of federal

aid cannot discriminate against individuals based on their disabilities.  *Id.*; *M.Y. v.*

*Special Sch. Dist.*, 544 F.3d 885, 888 (8th Cir.2008).

"To state a prima facie case under section 504, a plaintiff must show that he or she (1) is a qualified individual with a disability; (2) was denied the benefits of a program or activity of a public entity receiving federal funds; and (3) was discriminated against based on her disability." *M.Y.*, 544 F.3d at 888. A plaintiff must also "show that the discrimination reflected bad faith or gross misjudgment." *Id.*

Plaintiff claims that Defendants have discriminated against him by (1) denying him reasonable accommodations which would allow him to receive the full benefits of his school program; (2) excluding him from participating in and denying the benefits of a public education program; (3) failing to provide necessary oversight, accommodations, training, and other measures; (4) refusing to implement audiovisual monitoring; (5) a pattern and practice of inadequate funding of State Schools, including Mapaville; (6) excluding Plaintiff from the District and placing him in the State School program which suffers systemic infirmities; and (7) failing to provide him with a free appropriate education. State Defendants move to dismiss on two bases: (1) Plaintiff has not adequately identified the provision of § 504 under which he seeks relief; and (2) Plaintiff's claims relating to audiovisual monitoring fail to state a claim upon which relief can be granted.

State Defendants argue that Plaintiff should be required to allege the specific provisions of the Rehabilitation Act under which he seeks relief, and should be required to delineate which Defendant took what actions in violation of the Act. Section 504 of the Rehabilitation Act, codified at 29 U.S.C. § 794, contains only one paragraph prohibiting any conduct: section 504(a). The other provisions of § 504 do not prohibit any conduct and therefore are not capable of being violated. Section 504(b) lists definitions. Section 504(c) provides an exemption for small providers. Section 504(d) identifies the standards used to determine whether a violation has occurred. Because Plaintiff's reference to § 504 can only refer to a violation of § 504(a), codified at 29 U.S.C. § 794(a), the Court will not dismiss the Rehabilitation Act claim on this basis. Moreover, Plaintiff delineates the actions taken by and conduct of Defendants which he claims violate § 504(a). Further discovery will provide Defendant with the necessary specifics they require. The motion based on this ground will likewise be denied.

State Defendants also argue that Plaintiff has failed to state a claim to the extent his argument is based on their refusal to implement audiovisual monitoring and/or surveillance. Plaintiff asserts that audiovisual monitoring is a reasonable accommodation because he unable to vocalize neglect, abuse and the denial of a free and appropriate education.

The Eighth Circuit "has not held one way or the other on whether a failure to provide a reasonable accommodation may constitute discrimination on the basis of one's disability under section 504." *M.Y.*, 544 F.3d at 889; *Davis v. Francis Howell Sch. Dist.*, 138 F.3d 754, 757 (8th Cir.1998) (stating "[t]his court has not determined whether the failure to make reasonable modifications in a policy is itself discrimination even where the policy and its rationale cannot be shown to be discriminatory."). State Defendants do not provide any authority in support of their argument that the Rehabilitation Act does not permit the installation of video cameras as an accommodation. Therefore, State Defendants' motion to dismiss the Rehabilitation Act claim will be denied without prejudice.

**Americans with Disabilities Act**

Congress enacted the Americans with Disabilities Act ("ADA"), in part, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA consists of four titles. Each of the separate titles focuses on

> separate types of conduct: Title I prohibits discrimination in employment against qualified individuals with disabilities. See 42 U.S.C. § 12112. Title II prohibits "public entities" from excluding disabled individuals from or denying them the benefits of programs, activities, or services, and from otherwise discriminating against them. See 42 U.S.C. § 12132. Title III prohibits discrimination or the denial of "full and equal enjoyment" of goods, services, and other benefits

provided by "places of public accommodation" operated by private entities. See 42 U.S.C. §§ 12181(6), (7), 12182.

*Klingler v. Dep't of Revenue*, 433 F.3d 1078, 1080 (8th Cir.2006). Title IV

contains various miscellaneous provisions. 42 U.S.C. § 12201, et seq. Title IV's

only prohibition relates to retaliation, coercion, and intimidation. 42 U.S.C. §

12203.

Plaintiff claims that Defendants have discriminated against him in violation of

the ADA by (1) denying him reasonable accommodations to allow him to receive

the full benefits of his school program; (2) excluding him from participating in and

denying the benefits of a public education program; (3) failing to provide necessary

oversight, accommodations, training, and other measures; and (4) refusing to

implement audiovisual monitoring. State Defendants move to dismiss on three

bases: (1) Plaintiff has not adequately identified under which title of the ADA he

seeks relief; (2) the denial of a free and appropriate education, inadequate

monitoring of schools and the need for 24-hour audiovisual surveillance are not the

type of wrongs that Title II was designed to address; and (3) the Eleventh

Amendment bars Plaintiff from seeking monetary damages under the ADA.


State Defendants argue that because Plaintiff alleges a violation of the ADA

and does not identify which Title, Plaintiff should be required to allege the specific section of the ADA under which he seeks relief. As discussed above, the ADA's various titles apply to different types of discrimination. Title I applies to employment discrimination. Title III applies to discrimination in places of public accommodation. Title II applies to discrimination by public entities.

Title II of the ADA provides, in relevant part, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits if the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In a school case, the plaintiff must also allege bad faith or gross negligence. *Hoekstra v. Ind. Sch. Dist., No. 283*, 103 F.3d 624, 626-27 (8th Cir.1996); *Thompson v. Bd. of Special Sch. Dist., No. 1*, 144 F.3d 574, 580 (8th Cir.1998).

The ADA defines "public entity" as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority...." 42 U.S.C. § 12131(1). "It is plain that Missouri qualified as a 'public entity' for purposes of the ADA and that as a result it is bound by Title II of the Act." *Klingler*, 433 F.3d at 1080. The Missouri State Board of Education and its component agencies also qualify as public entities for purposes of

the ADA and are thereby bound by Title II. Because Plaintiff's claim against the State of Missouri can fall only under Title II of the ADA and State Defendants reference Title II as the proper section in their own memorandum, the Court will not dismiss Plaintiff's ADA claim for failing to specify that he seeks relief under Title II of the ADA.

State Defendants also argue that Plaintiff's ADA claim should be dismissed because the denial of a free and appropriate education, inadequate monitoring of schools and the need for 24-hour audiovisual surveillance are not the type of wrongs that Title II was designed to address. State Defendants have provided no argument or authority regarding why Plaintiff has failed to state a claim. State Defendants' entire argument is the Act does not authorize or require installation of audio/video surveillance equipment or closure of public schools. State Defendants have not offered an explanation of what element Plaintiff's Title II claim lacks or an explanation of why the wrongs Plaintiff has alleged are not redressible by Title II of the ADA. Absent any argument or authority, the Court will not dismiss Plaintiff's claim on the record before the Court.

**Eleventh Amendment**

State Defendants argue that Eleventh Amendment sovereign immunity shields them from claims for money damages. The ADA was enacted with a provision

purporting to abrogate eleventh amendment sovereign immunity.  42 U.S.C. § 12202

("A State shall not be immune under the eleventh amendment to the Constitution of

the United States from an action ... for a violation of this chapter.").  The Supreme

Court upheld 42 U.S.C. § 12202's abrogation of state sovereign immunity in certain

circumstances.  *United States v. Georgia*, 546 U.S. 151, 159 (2006).  The Supreme

Court explained "[t]hus, insofar as Title II creates a private cause of action for

damages against the States for conduct that actually violates the Fourteenth

Amendment, Title II validly abrogates state sovereign immunity."  *Id*.  Conversely,

to the extent the State's conduct does not violate the Fourteenth Amendment, it is

immune from money damages.  Cf.  *id*.  Thus, the sovereign immunity determination

must be made on a claim-by-claim basis. *Klingler,*  455 F.3d at 891-92.

Disparate treatment based on disability implicates the equal protection clause

of the Fourteenth Amendment.  *Id*. at 894.  Because disability is not a suspect class,

disparate treatment on the basis of disability is subject to rational basis review. *Id*.

In this case, Plaintiff alleges that State Defendants have discriminated against him

on the basis of his disability.  If State Defendants' actions were to fail rational basis

review, Plaintiff would be able to seek money damages on his ADA claim.  No

discovery has occurred and neither side has briefed the issue regarding whether the

claimed disparate treatment survives rational basis review.  It is therefore premature

to determine whether Plaintiff may seek money damages from State Defendants on his ADA claim.

State Defendants also argue that Plaintiff claims must be dismissed because the Complaint does not fall within the exception to the Eleventh Amendment preclusion of federal jurisdiction for suits seeking prospective equitable relieve against state officers. See *Ex parte Young*, 209 U.S. 123, 156 (1908). Plaintiff, recognizing the exception and the need for prospective injunctive relief argues this is the precise relief he seeks. Because Plaintiff acknowledges and accepts the Court's jurisdictional limitation under the Eleventh Amendment, his claims will not be dismissed but will, consequently, be limited to the said relief.

**Section 1983 Equal Protection Claim**

Plaintiff alleges, among other things, that he "received intentionally different treatment from other similarly situated individuals" because Defendants failed to provide the same resources and training to students at State Schools that disabled students in school districts receive. Plaintiff also alleges that State Defendants have excluded him from the school district and placed him in a State School on the basis of his disability. State Defendants move to dismiss on the ground that a state agency is not "a person" subject to suit under 42 U.S.C. § 1983.

42 U.S.C. § 1983 provides, "[e]very person who, under color of [law] causes

to be subjected, any citizen of the United States or other person within the
jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured
by the Constitution and laws, shall be liable...."  "Section 1983 provides a cause of
action against 'persons' only."  *Barket, Levy & Fine, Inc. v. St. Louis Thermal
Energy Corp.*, 948 F.2d 1084, 1086 (8 th Cir.1991).  A state is not "a person" under
§ 1983.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 71, (1989).  A suit
against a state Board of Education or Departments of Education is also an action
against the state. Cf. *Robinson v. Kansas*, 295 F.3d 1183, 1191 (10th Cir.2002)
(concluding the chairperson of the state Board of Education was a state official).
Consequently, Plaintiff cannot bring claims against State Defendants under § 1983.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Missouri State Board of
Education, Missouri Department of Elementary and Secondary Education, and State
Schools for the Severely Handicapped's motion to dismiss [Doc. No. 10] is granted
in part and denied in part.  Defendants' motion is denied as to Counts I, II and III.
Defendants' motion is granted as to Count IV.

**IT IS FURTHER ORDERED** that Defendant's alternative motion for more

definite statement is **DENIED.**

Dated this 8th day of September, 2009.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE